**KENTUCKY POWER COMPANY,**
Appellant,

v.

**Maggie DAVIS et al., Appellees.**

Court of Appeals of Kentucky.

June 14, 1963.

Willis W. Reeves, Hazard, O. J. Cockrell, Jackson, Smith, Reed & Leary, E.

Gaines Davis, Jr., Frankfort, for appellant.

J. Douglas Graham, Campton, Jesse S. Hogg, Winchester, for appellees.

MILLIKEN, Judge.

The one and a half story frame home of the Davises burned down about 8:00 a. m. on a fair day, November 7, 1958, when the outside temperature was near freezing and no heating equipment was in service in the house. Maggie Davis was finishing washing the breakfast dishes in her detached kitchen, heated by a coal-burning range, when her three-year old grandson ran in to tell her the house was on fire. She testified that the fire was on the opposite or lower side of the home, about twelve feet from the electric meter, and ran down along the lead wire or cable to the meter box. This circumstance was confirmed by a helper who also supported her testimony that the cable was attached to the side of the frame home by metal staples or steeples and not by the insulated clamps usually used for that purpose. The Power Company denied the use of such staples in the wiring and introduced its records to support its contentions. In any event, no previous trouble had occurred from the installation which had functioned properly for approximately fifteen years.

Since there was no heating equipment in use in the home at the time and no evidence of fire inside the home in the beginning, it is the Davises' view that the fire was started by the Company's wiring on the outside of the home, erosion of the insulation and contact of the bared cable with the metal staples which held the cable to the frame home. In view of the total destruction of the home, it was impossible to establish the truth of that theory by direct evidence, thus leaving tenable the Company's theory that the fire started within the walls of the home from defective wiring over which the Company had no control. The jury awarded the Davises $2,500 for the loss of their home, and the question before us is whether there is enough evidence of negligence to sustain the award. Despite the contention of plaintiffs in the brief, we have not found any direct testimony that the wires were on fire on the outside of the home before the home itself was aflame—that is, whether flaming wires set fire to the home or the flaming home set fire to the wires.

In Kentucky & West Virginia Power Company v. Kilburn (1947), 304 Ky. 635, 201 S.W.2d 896, at page 898, where a somewhat similar situation was discussed, we said:

"We cannot usurp the prerogatives of the jury. It was alleged and proven by a number of witnesses that staples were used in fastening the service wires to the house and that insulators were not used. We are not to pass upon the credibility of the witness, Cornett, who testified positively that he saw the wires leading to the house first burning. It is true that mere suspicion or conjecture as to what caused a fire is not sufficient to take the case to the jury. The plaintiff, to entitle him to recover, has the burden first of showing negligence in the installation. * * * It cannot be said here that there is a total failure of proof of negligence or no room for reasonable inference that the proven negligence had causal connection with the fire."

In the present case we do not have any witness who testified that he "saw the wires to the house first burning," so as to establish the causal relationship between the initial negligence—the use of staples (if that is negligence)—and the location of the fire along the cable on the side of the house. We have held heretofore that such evidence does not establish the causal relationship but merely causes a jury to speculate as to whether the Company's portion of the wiring was so defective as to cause the fire. Kentucky Power Company v. Combs (1957), Ky., 305 S.W.2d 105. And

in Kentucky Power Company v. Hogg (1957), Ky., 301 S.W.2d 1, where a worn place was noticed on the Company's cable, but of which the Company had no notice, and its wires were down after the fire was discovered, we commented "this wire could have easily burned through after the fire [was] started," and was so speculative in its implications that it was not sufficient to justify submitting the case to the jury.

Speculation is heightened in the present record because the Company offered evidence that its cable was properly installed by insulated clamps and the plaintiffs' own witness, the electrician who rewired their home, declared that he always made it a point to check the outside wiring when he wired a home and that in this instance the Company's cable was properly installed with insulated clamps, not staples. Of course, this testimony, as well as any other admitted, is a matter for the jury to consider, but we mention it here to show the conflicting nature of the testimony offered in this case in order, in turn, to show how important it is to establish the causal relationship by evidence of probative value and not by mere speculation. The rapidity with which the home was consumed in itself suggests that fire was at work for some time before it was discovered on the outside of the building, but this, of course, again is speculation—not proof. Attempts to establish causation by assuming that the staples allegedly used wore through the insulation on the cable and thus caused the fire are assumptions purely, for there is no evidence that the insulation on the cable or the service wires was in fact worn off before the fire.

The judgment is reversed and judgment is directed for the Company.